UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

                    Plaintiff,

- against -

Kun Fung USA Trading, a/k/a Kun Fung Trading
Co., Sonic Group, Inc., Wong Fat Market Inc.,
a/k/a Gung Fat Market, Cheung Fat Trading Inc.,
a/k/a Cheung Fat Market, Gung Fat Trading
Inc., Metropolitan Group USA Inc., Chun Wai
Chak, a/k/a Ah Chak, Yuan Xi Li a/k/a Li Yuen,
a/k/a Ah Yuen, Xue Mei Huang, a/k/a May Huang,
Shu Fong Wong a/k/a Shu Wong, Zhe Doe, and
John Does 1-10,

                    Defendants.

----------------------------------------X

07-CV-2568
(CPS)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge

Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd., brings this action against defendants Kun Fung USA Trading, a/k/a Kun Fung Trading Co.; Sonic Group, Inc.; Wong Fat Market Inc., a/k/a Gung Fat Market; Cheung Fat Trading Inc., a/k/a Cheung Fat Market; Gung Fat Trading Inc.; Metropolitan Group USA Inc.; Chun Wai Chak, a/k/a Ah Chak; Yuan Xi Li a/k/a Li Yuen, a/k/a Ah Yuen; Xue Mei Huang, a/k/a May Huang; Shu Fong Wong a/k/a Shu Wong; Zhe Doe; and John Does 1-10. In the Complaint, plaintiff alleges that defendants engaged in (1) trademark infringement, pursuant to 15 U.S.C. § 1114; (2) counterfeiting, pursuant to 15 15 U.S.C. § 1116; (3) trade dress infringement, pursuant to 15 15 U.S.C. § 1125(a); (4) unfair competition, pursuant to 15 15 U.S.C. §

1125(a); (5) dilution, under NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. Now before this Court is plaintiff's motion for an *ex-parte* seizure order, pursuant to 15 U.S.C. § 1116. For the reasons set forth below, the motion for *ex-parte* seizure is denied, without prejudice.[1]

## Background

The following facts are derived from plaintiff's Complaint and papers submitted in support of this motion and as accepted as true for the purposes of this application.

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun. These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world. The United States is one of plaintiff's largest markets.

Plaintiff has a registered trademark featuring a distinctive design that is used on all Koon Chun products, that it uses in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the

---

[1] Plaintiff also moves for a preliminary injunction and for expedited discovery. Those motions should be decided in adversary proceedings and will be scheduled in due course.

"trade dress"), which serve to distinguish the products for consumers. The label design has become widely associated by consumers and industry with plaintiff, whose products have a reputation for quality and significant sales and growth, and plaintiff enjoys substantial goodwill from the label design owing to the length of use and the design's distinctive nature.[2] Accordingly, the trademarks are an important business asset smf monetary damages cannot compensate plaintiff for injury suffered from the loss of reputation and goodwill that result from unauthorized use of its trademark.

*Defendants' Activities*

According to plaintiff, there exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the type made by plaintiff bearing counterfeit versions or colorable imitations of plaintiff's trademark. Over the last several years, since discovering that such counterfeiting was going on, plaintiff has initiated several actions to halt these activities and has, on order of appropriate courts, seized many counterfeit items as a result. In the current action, plaintiff alleges that the defendants are

---

[2] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

interrelated entities[3] and individuals engaged in selling counterfeit products bearing plaintiff's trademark and trade dress.

Plaintiff began investigating the activities of the current defendants in November 2006, when one of plaintiff's distributors reported that a customer, Win's Produce Inc. ("Win's"), had returned five cases of soy sauce with plaintiff's labels on them after complaining that the taste and color were incorrect. The distributor sent the product to plaintiff who inspected the product and discovered that it was a counterfeit Koon Chun product, though it looked almost identical to authentic Koon Chun products.

Upon investigation, plaintiff was told that Win's had purchased the counterfeit product from a defendant named Ah Yuen. The invoice provided by Ah Yuen identified the distributor of the counterfeit product as defendant Gung Fat Trading Inc. Ah Yuen also provided Win's with a contact phone number, which plaintiff identified as a cell phone owned by defendant Xue Mei Huang. Plaintiff identified Huang's home address as 441 Maryland Avenue in Staten Island, a house co-owned by Huang and an individual known as Yuan Xi Li, who are husband and wife. Base on observations by plaintiff's investigator, plaintiff determined that Yuan Xi Li and defendant Ah Yuen are the same person.

---

[3] The interrelationship is demonstrated below by what plaintiff has observed and by the shared phone numbers and addresses of defendants.

To further their investigation, plaintiff arranged for Win's to order additional products from Ah Yuen. That order was delivered in a white van registered in the name of Yuan Xi Li and driven by Au Yuen. The van was also observed at the 441 Maryland Avenue residence.[4]

Upon delivery, an invoice was provided to Win's from defendant Sonic Group, with an address of 71 15th Street in Brooklyn, a locked warehouse with no sign that is large enough to hold "ten to twenty containers of merchandise." Plaintiff's investigator determined that defendant Cheung Fat Trading also uses that addresses. The investigator also identified an internet site which listed Cheung Fat's phone number as (718) 788-2822.

After the delivery, Ah Yuen drove the van to 4617 8th Avenue in Brooklyn, the location of defendant Wong Fat Market, an Asian grocery store which sells Koon Chun products and has a "storage area at the back." Ah Yuen went into the premises and "stayed working there."

In April 2007, plaintiff seized the books and records of Tung Ming Trading, Inc., another alleged counterfeiter of plaintiff's products, pursuant to a court order in this

---

[4] Plaintiff has not stated where the goods delivered in this shipment were stored prior to delivery.

district.[5] According to those records, Tung Ming was provided with counterfeit products by defendant Kun Fung USA Trading, located at 950 4th Avenue in Brooklyn. The owners of 950 4th Avenue were determined by plaintiff's investigators to be Shu Huai Lau and defendant Shu Fong Wong. That location is a three story building with a Chinese restaurant on the ground floor. The restaurant's telephone number is (718) 832-7760. The building "appeared big enough to hold a substantial inventory of counterfeit products."

Among the phone numbers listed on invoices from Kun Fung and provided to Tung Ming was (718) 788-2822, the same number used by Cheung Fat. Kung Fun is operated by defendant Chun Wai Chak who used several telephone numbers, including (718) 788-2822, the same number used by Cheung Fat. Plaintiff is also in possession of a false registration application[6] filed with the Food and Drug Administration which lists defendant Metropolitan Group USA as a the U.S. agent in the application, with an address of 950 4th Avenue in Brooklyn. The owner listed on the application is defendant "Zhe" with a phone number of (718) 832-7760, the same

---

[5] Tung Ming Trading is not a party to this litigation. According to plaintiff, Tung Ming provided counterfeit products to a company called Midwest Global Food Distributors, LLC, who plaintiff sued in the Northern District of Illinois in February 2007.

[6] The original document sent to the FDA was apparently a request to register a facility. The FDA mailed a request for confirmation to a Hong Kong address listed in the request, which was not plaintiff's address, but the letter was delivered to plaintiff by a postman familiar with their actual address.

number as used by the restaurant.

Plaintiff believes from experience in at least one similar counterfeiting case[7] that if defendants become aware of pending litigation, they will destroy or otherwise hide their records and any inventory and that, without seizure, vital evidence will be lost.

## Discussion

Plaintiff seeks a seizure order allowing it to enter, search for, and seize certain property at four locations: 950 4th Avenue, 71 15th Street, 4617 8th Avenue, and 441 Maryland Avenue. The property to be seized is described as all merchandise bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom); all forms of markings (such as labels and signs), packaging materials, advertisements, "and the like" bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom) and all means of making such markings; all books and records showing defendants' manufacture, purchase, financing, transporting, receipt, distribution and sale of merchandise bearing these marks; and all books and records showing defendants' manufacture, purchase, financing, transporting, receipt, distribution and sale of forms

---

[7] Plaintiff specifically refers to one case in which it was involved in which the defendant hid 1500 cases of counterfeit soy sauce and documents relating to sales.

of markings, packaging materials, advertisements "and the like" bearing these marks.

*Standard for Ex-Parte Seizure*

15 U.S.C. § 1116(d)(1)(a) provides that:

> In the case of a civil action arising under section 1114(1)(a) of this title or section 220506 of Title 36 with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

The statute further states that the application shall not be granted unless:

> (B) the court finds that it clearly appears from specific facts that -
> (i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title;
> (ii) the applicant has not publicized the requested seizure;
> (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
> (iv) an immediate and irreparable injury will occur if such seizure is not ordered;
> (v) the matter to be seized will be located at the place identified in the application;
> (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
> (vii) the person against whom seizure would be ordered,

or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

18 U.S.C. § 1116(d)(4).

In the present case, plaintiff's motion must be denied since I am unable to find from the specific facts alleged that the matter to be seized will be located that the place identified in the application for at three of the four locations to be searched. In addition, plaintiff has also failed to comply with other requirements of § 1116, as discussed below.

*Location of Matter to be Seized*

With respect to requirement that the application identify the place where the matter to be seized may be found, Congress acknowledged that courts will have to be flexible "but should require as great a degree of specificity as is possible under the circumstances, and should not grant orders, for example, permitting seizure to take place "'anywhere in downtown Washington, DC.'" 130 Cong. Rec. H12076, quoted in McCarthy, Appendix A8 at A8-18 to A8-20. As this Court has stated in the past, while seizures under § 1116 are constitutionally permissible, "this statute must be construed in accordance with the Constitution . . . . Though the Fourth Amendment principles of probable cause and particularity do not apply with the same force in civil proceedings, they inform and restrict the

statute's implementation." *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F.Supp. 407, 412 (E.D.N.Y. 1994).

In discussing the purpose of the Fourth Amendment's protections, the Supreme Court has explained that

> [t]he manifest purpose of [the Fourth Amendment's] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *U.S. v. Ross*, 456 U.S. 798, 824 (1982)). With this in mind, I now review each of the locations which plaintiff wishes to search.

The building at 950 4th Avenue appears to be the headquarters of Kun Fung USA Trading, a company which has supplied counterfeit products to Tung Ming in the past. That building is a three-story building with a restaurant on the ground floor. While the premises "appeared big enough to hold a substantial inventory of counterfeit products," plaintiff has made no specific statements as to where within the building the counterfeit products or records may be kept. In particular, while the FDA registration application lists a contact phone number which is the same as the restaurant's phone number, there

is no reason to believe that the restaurant itself was involved in the illegal activity. The proposed order is so broad that it would allow plaintiff to explore the entire building, top to bottom, including the restaurant, an apparently legal business, as well as all other parts of the building, whether or not Kun Fung has offices or storerooms in the part of the building searched. While it may be likely that some evidence will be found somewhere within the building, without more particularity as to where in the building evidence of defendants' activity is likely to be found, the current application lacks sufficient particularity to permit a finding of fact that the matter to be seized will be located at the place identified in the application.

Regarding the building at 4617 8th Avenue, there is no indication in plaintiff's submissions that anything illegal will be found at that location. The only connection between that building and the illegal activity is that Ah Yuen, a participant in the illegal scheme, apparently worked in a grocery store at 4617 8th Avenue after making a delivery of counterfeit products to another store and that the store at 4617 8th Avenue has a storage area in back, something entirely consistent with the legitimate operation of a grocery store. Moreover, while plaintiff states that the store sells Koon Chun products, it does not allege that the store sells counterfeit products. If

the store were connected to the scheme, they would be expected to sell counterfeit, rather than authentic, products. Accordingly, plaintiff has failed to demonstrate that the evidence to be seized will be located at this location.

Nor are specific facts alleged to support a finding that records or other evidence would be found at the house at 441 Maryland Avenue, or, if they are in the house, where in that house they might be found. "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (citations omitted). The fact that participants in this scheme lived in the house and that a truck used in this scheme was parked at that house fails to provide any inference that there are either counterfeit products or related records located at that property.[8]

Finally, plaintiff requests a seizure order as to the 71 15th Street location. That property is a warehouse, a facility ordinarily used for the storage of goods and records. The address of the warehouse was listed in an invoice for counterfeit goods provided to Win's. In addition, Cheung Fat Trading uses that address and has a phone number of (718) 788-2822, the same number provided to Tung Ming on invoices for counterfeit goods

---

[8] Indeed, a fair inference from plaintiff's papers are that Ah Yuen is merely a delivery person.

purchased from Kun Fung. Accordingly, there is sufficient particularity to permit a finding that the matter to be seized is likely to be found within the warehouse at that location.

*Particularity of the Proposed Order*

With regards to the proposed order submitted by plaintiff, it appears too broad and insufficiently specific to "enable the executing officer to ascertain and identify with reasonable certainty those items [he has been] authorized . . . to seize." *U.S. v. George*, 975 F.2d 72, 75 (2d Cir. 1992); see also 15 U.S.C. § 1116(d)(5) (An ex-parte seizure order must set out "a particular description of the matter to be seized, and a description of each place at which such matter is to be seized."). While the request to seize products or records which contain plaintiff's trademark is sufficiently specific, given that plaintiff has provided clear pictures of its trademark, the proposed order also authorizes plaintiff to seize records which reference the trademark by "by style or code number or otherwise" and also authorizes seizure of "all plates, molds, dies, tooling machinery, assembly equipment, and other means of making" items (such as labels and advertisements) which contain plaintiff's trademark. Plaintiff has failed to explain how one could identify references to plaintiff's trademark "by style or code number or otherwise" with sufficient particularity so as to

prevent those executing the order from simply seizing all records on the chance that they may contain such information, including records that have nothing to do with any illegal activity by defendants. Further, plaintiff has failed to explain how those executing the order are to identify which equipment was used in making items containing counterfeit trademarks.

*Role of Law Enforcement*

The proposed order prepared by plaintiff provides that "plaintiff is authorized *under the supervision* of the United States Marshal for this District to take all necessary steps, including breaking open, entering, and searching said property . . . ." (emphasis added). In *Warner Bros Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989), the Second Circuit expressed its disapproval of search and seizure by a private agent in a copyright case, holding that "tradition and established law dictate that such drastic acts as seizure and impoundment be conducted by neutral and impartial persons" and that "many Fourth and Fifth Amendment problems may be avoided" when a sheriff or other officer of the law is used to effect the seizure. Moreover, 15 U.S.C. § 1116(d)(9) explicitly provides that seizures must be effected by "a law enforcement officer." Further, in reviewing previous seizure orders obtained by plaintiff, other courts have specified that law enforcement

agents are the parties authorized to carry out the search and seizure of property. Accordingly, since the proposed order fails to comply with the requirement of § 1116(d)(9) and the instructions of the Second Circuit, it must be denied.

*Notice to United States Attorney*

15 U.S.C. § 1116(d)(2) states that:

> The court shall not receive an application under this subsection unless the applicant has given such notice of the application as is reasonable under the circumstances to the United States attorney for the judicial district in which such order is sought. Such attorney may participate in the proceedings arising under such application if such proceedings may affect evidence of an offense against the United States. The court may deny such application if the court determines that the public interest in a potential prosecution so requires.

Plaintiff in this case has made no showing that it has notified the U.S. Attorney before applying for a seizure order.

## Conclusion

For the reasons set forth above, plaintiff's motion for an *ex-parte* seizure order is denied, without prejudice to its renewal. The Clerk is directed to transmit a filed copy of the within to plaintiff.

SO ORDERED.

Dated :   Brooklyn, New York
         June __, 2007

By: _____s/Charles P. Sifton_____
         United States District Judge