Sealed Case—
not filed on ECF ✓

**SEALED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

                     Plaintiff,

      - against -

Kun Fung USA Trading, a/k/a Kun Fung Trading
Co., Sonic Group, Inc., Wong Fat Market Inc.,
a/k/a Gung Fat Market, Cheung Fat Trading Inc.,
a/k/a Cheung Fat Market, Gung Fat Trading
Inc., Metropolitan Group USA Inc., Chun Wai
Chak, a/k/a Ah Chak, Yuan Xi Li a/k/a Li Yuen,
a/k/a Ah Yuen, Xue Mei Huang, a/k/a May Huang,
Shu Fong Wong a/k/a Shu Wong, Zhe Doe, and
John Does 1-10,

                     Defendants.

    07-CV-2568
    (CPS)

    MEMORANDUM
    OPINION AND
    ORDER

-------------------------------------------X

SIFTON, Senior Judge.

    Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
brings this action against defendants Kun Fung USA Trading, a/k/a
Kun Fung Trading Co.; Sonic Group, Inc.; Wong Fat Market Inc.,
a/k/a Gung Fat Market; Cheung Fat Trading Inc., a/k/a Cheung Fat
Market; Gung Fat Trading Inc.; Metropolitan Group USA Inc.; Chun
Wai Chak, a/k/a Ah Chak; Yuan Xi Li a/k/a Li Yuen, a/k/a Ah Yuen;
Xue Mei Huang, a/k/a May Huang; Shu Fong Wong a/k/a Shu Wong; Zhe
Doe; and John Does 1-10.  In the Complaint, plaintiff alleges
that defendants engaged in (1) trademark infringement, pursuant
to 15 U.S.C. § 1114; (2) counterfeiting, pursuant to 15 15 U.S.C.
§ 1116; (3) trade dress infringement, pursuant to 15 15 U.S.C. §
1125(a); (4) unfair competition, pursuant to 15 15 U.S.C. §

1125(a); (5) dilution, under NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. On June 28, the undersigned denied, without prejudice, plaintiff's motion for an *ex-parte* seizure order. Now before this Court is plaintiff's renewed motion for an *ex-parte* seizure order, pursuant to 15 U.S.C. § 1116, plaintiff's motion for a temporary restraining order, and plaintiff's motion for expedited discovery. For the reasons set forth below, the motion for *ex-parte* seizure is granted in part and denied in part, the motion for a temporary restraining order is granted, and I reserve decision on the motion for expedited discovery.

## Background

Familiarity with the underlying facts, as set forth this Court's prior decision, is presumed.

## Discussion

Plaintiff seeks a seizure order allowing it to enter, search for, and seize certain property at four locations: 71 15th Street, 950 4th Avenue,[1] 4617 8th Avenue,[2] and 441 Maryland

---

[1] Plaintiff limits the request to the second and third floors and the storage and office areas on the ground floor, excluding the public space in the restaurant.

[2] Plaintiff limits the request to the storeroom at the rear of the ground floor.

Avenue.[3]  The property to be seized is described as all
merchandise bearing a copy of plaintiff's trademark (or any
marking substantially indistinguishable therefrom); all forms of
markings (such as labels and signs), packaging materials,
advertisements, "and the like" bearing a copy of plaintiff's
trademark (or any marking substantially indistinguishable
therefrom) and all equipment which can be used to such markings
which in fact bear a copy of plaintiff's trademark (or any
marking substantially indistinguishable therefrom); all books and
records showing defendants' manufacture, purchase, financing,
transporting, receipt, distribution and sale of merchandise
bearing these marks, "either by direct reference to such
trademarks or indirectly by product description, code language or
code number," and all records "which relate to or are likely to
lead to information regarding issues in this case"; and all books
and records showing defendants' manufacture, purchase, financing,
transporting, receipt, distribution and sale of forms of
markings, packaging materials, advertisements "and the like"
bearing these marks "either by direct reference to such
trademarks or indirectly by product description, code language or
code number," and all records "which relate to or are likely to
lead to information regarding issues in this case."

_____

   [3] Plaintiff limits the request to the "home office and document storage
area."

I. Ex-Parte Seizure

**A. Section § 1116(d)(1)(a) Standard**

15 U.S.C. § 1116(d)(1)(a) provides that:

> In the case of a civil action arising under section
> 1114(1)(a) of this title or section 220506 of Title 36
> with respect to a violation that consists of using a
> counterfeit mark in connection with the sale, offering
> for sale, or distribution of goods or services, the
> court may, upon ex parte application, grant an order
> under subsection (a) of this section pursuant to this
> subsection providing for the seizure of goods and
> counterfeit marks involved in such violation and the
> means of making such marks, and records documenting the
> manufacture, sale, or receipt of things involved in
> such violation.

The statute further states that the application shall not be

granted unless:

> (B) the court finds that it clearly appears from
> specific facts that -
> (i) an order other than an *ex parte* seizure order is
> not adequate to achieve the purposes of section 1114 of
> this title;
> (ii) the applicant has not publicized the requested
> seizure;
> (iii) the applicant is likely to succeed in showing
> that the person against whom seizure would be ordered
> used a counterfeit mark in connection with the sale,
> offering for sale, or distribution of goods or
> services;
> (iv) an immediate and irreparable injury will occur if
> such seizure is not ordered;
> (v) the matter to be seized will be located at the
> place identified in the application;
> (vi) the harm to the applicant of denying the
> application outweighs the harm to the legitimate
> interests of the person against whom seizure would be
> ordered of granting the application; and
> (vii) the person against whom seizure would be ordered,
> or persons acting in concert with such person, would
> destroy, move, hide, or otherwise make such matter

inaccessible to the court, if the applicant were to proceed on notice to such person.

18 U.S.C. § 1116(d)(4). I will now review these factors in turn.


*(v) Location of Matter to be Seized*[4]

With respect to the requirement that the application identify the place where the matter to be seized may be found, Congress acknowledged that courts will have to be flexible "but should require as great a degree of specificity as is possible under the circumstances, and should not grant orders, for example, permitting seizure to take place "'anywhere in downtown Washington, DC.'" 130 Cong. Rec. H12076, quoted in McCarthy, Appendix A8 at A8-18 to A8-20. As this Court has stated in the past, while seizures under § 1116 are constitutionally permissible, "this statute must be construed in accordance with the Constitution . . . . Though the Fourth Amendment principles of probable cause and particularity do not apply with the same force in civil proceedings, they inform and restrict the statute's implementation." *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2,* 876 F.Supp. 407, 412 (E.D.N.Y. 1994).

In discussing the purpose of the Fourth Amendment's protections, the Supreme Court has explained that

[t]he manifest purpose of [the Fourth Amendment's]

---

[4] Since this was the primary concern expressed in my earlier dismissal, I begin with this issue, although it is the fifth factor under the statute.

particularity requirement was to prevent general
searches. By limiting the authorization to search to
the specific areas and things for which there is
probable cause to search, the requirement ensures that
the search will be carefully tailored to its
justifications, and will not take on the character of
the wide-ranging exploratory searches the Framers
intended to prohibit. Thus, the scope of a lawful
search is 'defined by the object of the search and the
places in which there is probable cause to believe that
it may be found.'

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *U.S. v.
Ross*, 456 U.S. 798, 824 (1982)). With this in mind, I now review
each of the locations which plaintiff wishes to search.

I previously held that there was sufficient evidence to
permit a finding that the matter to be seized is likely to be
found at the 71 15th Street location and I reaffirm that finding
now.

950 4th Avenue, a three-story building with a restaurant on
the ground floor, appears to be the headquarters of Kun Fung USA
Trading, a company which has supplied counterfeit products to
Tung Ming in the past.[5] As the premises "appeared big enough to
hold a substantial inventory of counterfeit products," plaintiff
argues that it is likely that counterfeit products are contained

---

[5] In my earlier decision dismissing the motion, I found that "[t]he
proposed order is so broad that it would allow plaintiff to explore the entire
building, top to bottom, including the restaurant, an apparently legal
business, as well as all other parts of the building, whether or not Kun Fung
has offices or storerooms in the part of the building searched . . . . [T]he
current application lacks sufficient particularity to permit a finding of fact
that the matter to be seized will be located at the place identified in the
application."

in the building, as well as records of counterfeit sales.
Further, plaintiff describes witnessing late night activity on
the second floor which indicates that defendants maintain offices
there from which they arrange shipments of counterfeit goods from
China.  In addition, according to plaintiff, since the FDA
registration application lists a contact phone number which is
the same as the restaurant's phone number and the building has
only one mailbox, it is reasonable to conclude that the entire
building belongs to a single entity and that those who run the
restaurant are intimately involved in the counterfeiting scheme
and, accordingly, that the entire building should be subject to
search, other than the public spaces of the restaurant which the
investigator has already determined do not contain storage areas
or office space.[6]  In the view of this Court, plaintiff has
alleged sufficient facts to give reason to believe that the
second and third floors of the building contain offices and
possibly storage space for counterfeit goods and that any office
or storage space connected to the restaurant, which appears to be
controlled by the same individuals who control Kun Fung USA
Trading, may also contain such counterfeit goods as well.

However, regarding the storage room of the building at 4617
8th Avenue, there is still no indication in plaintiff's
submissions that anything illegal will be found at that location.

---

[6] According to plaintiff, excluding the public space will minimize the
disruption to the restaurant.

The only connection between that building and the illegal
activity is that Ah Yuen, a participant in the illegal scheme,
held a managerial position at the grocery store at 4617 8th
Avenue,[7] and that he looked concerned when plaintiff's
investigator began looking at Koon Chun products, which is
consistent with the allegation that Ah Yuen was involved in an
illegal operation involving Koon Chun products but does not
demonstrate that the building itself is the storage location for
any counterfeit products.  In fact, plaintiff concedes that no
counterfeit products were found in the store; as I have
previously said, if the store were connected to the scheme, they
would be expected to sell counterfeit, rather than authentic,
products.  Accordingly, plaintiff has failed to demonstrate that
the evidence to be seized will be located at this location.

Nor are specific facts alleged to support a finding that
records or other evidence would be found at the house at 441
Maryland Avenue, or, if they are in the house, where in that
house they might be found. As I previously noted, "[p]hysical
entry of the home is the chief evil against which the wording of
the Fourth Amendment is directed." *Payton v. New York*, 445 U.S.
573, 585 (1980) (citations omitted).  Though plaintiff contends
that in other cases, vital evidence has been found in the home
offices of defendants which would have been lost had the court

---

[7] Plaintiff does not allege that Ah Yuen owned the store.

not granted a seizure order[8] and that they will only search the "portion of [the] residence that constitutes the areas used as [Ah Yuen's] home office or to store documents,"[9] there is still no evidence that there are either counterfeit products or related records located at that property in the present case, even if Ah Yuen was the "ringleader" as plaintiff contends.

*(i) Need for Ex-Parte Seizure Order*

In explaining the need for this *ex-parte* seizure provision, Congress said:

> The purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases. Testimony before both the House and the Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. *The ex parte seizure procedure is intended to thwart this bad faith tactic,* while ensuring ample procedural protections for persons against whom such orders are issued.

Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984) (emphasis added).

---

[8] According to plaintiff, running a business from a home office equipped with a computer is easy and it is common for counterfeiters to use a home office to arrange shipments from China since phone calls must be made late at night in order to reach companies in China during the workday. However, in contrast to the late-night goings on at 950 4th Avenue, plaintiff does not allege that he saw any late-night activity at the house on Maryland Avenue.

[9] Plaintiff does not explain how they would be able to determine what constituted a location where Ah Yuen stored documents without, in fact, searching the entire house.

"Thus, the purpose of the statute is to facilitate the preservation of evidence, and '[a] key element is that the plaintiff must show that defendant is likely to dispose of the counterfeit goods if notice were given.'" *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 532 (5th Cir. 2002) (quoting McCarthy on Evidence, at § 30:37). That said, "it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders of seizure." *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y. 1994).

In the present case, plaintiff has alleged a counterfeiting scheme involving deception of consumers and the use of overlapping 'front' companies to conceal the trail of illegal activity. Accordingly, I find that there is a significant likelihood that defendants will attempt to conceal their activity by destroying or moving evidence. *See Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.*, 924 F.Supp. 17, 20 (S.D.N.Y. 1996). Any order of this Court short of a seizure order will alert defendants to the action and assist them in disposing of the evidence prior to discovery on this matter. *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979).

*(ii) Publicity*

In plaintiff's affidavit, plaintiff confirms that this

request has not been publicized.

*(iii) Likelihood of Success*

To prove a violation of 15 U.S.C. § 1114 for trademark infringement, plaintiff must establish that defendants used plaintiff's (1) valid trademark (2) in a way that is likely to confuse consumers as to the source of the product. *See U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

According to plaintiff's papers, their trademark has been properly registered and the "existence of a trademark registration is prima facie evidence of a valid trademark." *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966, 975 (E.D.N.Y. 1994). Further, plaintiff has used and continue to use this mark selling Cantonese food products for sale since at least 1927 and has used the trademark in conjunction with the current trade dress for at least the last ten years.

There is a "'great likelihood of confusion when the infringer uses the exact trademark' as the plaintiff." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (quoting *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 195 (3d Cir. 1990)). In such cases, "likelihood of confusion is inevitable." *Opticians*, 920 F.2d at 195. In fact, "[c]ases where a defendant uses an identical mark on competitive goods hardly

ever find their way into the appellate reports. Such cases are

'open and shut.'" *Id.* (quoting McCarthy, Trademarks and Unfair

Competition ); *see Gucci America, Inc. v. Duty Free Apparel,*

*Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) (In cases involving

counterfeit marks, "the Court need not undertake a

factor-by-factor analysis under *[Polaroid Corp. v. Polarad Elecs.*

*Corp.*, 287 F.2d 492 (2d Cir. 1961),] because counterfeits, by

their very nature, cause confusion."). Accordingly, plaintiff

has demonstrated a likelihood of success on the merits.


*(iv) Immediate and Irreparable Injury*

Should the seizure order not be granted, defendants will

have an opportunity to destroy or hide records of their

counterfeiting, as discussed above, which will cause immediate

and irreparable injury to plaintiff, since it will make it

difficult for plaintiff to ascertain the amount of damages caused

by defendants. It also appears likely that these records will

provide plaintiff with additional evidence as to the identity of

the original producer of the counterfeit products, evidence which

will be lost if the records are destroyed. Moreover, if the

order does not issue, defendants will continue to sell

counterfeit products which will confuse plaintiff's industry

partners and consumers and undermine plaintiff's goodwill,

causing plaintiff irreparable harm. *See Matter of Vuitton et*

*Fils, S.A.*, 606 F.2d at 4 (Discussing temporary restraining orders and find that "[i]n a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient.").

*(vi) Relative Harm*

Defendants will suffer some injury should seizure be ordered in the form of invasion of their privacy and interruption of their business. However, to the extent that items seized are counterfeit, defendants have no legitimate interest in the physical goods to be seized. The proposed order will allow the seizure of only those items bearing plaintiff's trademark, items referring to plaintiff's trademarked products, and machines used to create such counterfeit trademarks. To the extent the proposed order remains general and errors occur in seizure of physical evidence or records, it also requires plaintiff to return any items not covered by the order within seven business days and to post a significant bond. At the same time, as described above, the harm to plaintiff should evidence be destroyed or hidden and/or should defendants continue selling counterfeit products is significant. *See Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.*, 924 F.Supp. 17, 20 (S.D.N.Y. 1996) ("[T]he likelihood of destruction outweighed any harm to the Defendants, in light of the fact that the Plaintiffs' posted

a $25,000.00 bond, the Marshals were permitted to seize only those items that were determined to be counterfeit, and the Plaintiffs were required, immediately after the seizure, to inspect the goods and return any items that contained authorized use of trademarks.").

*(vii) Potential Destruction of Evidence*

As discussed above, it appears to this Court that there is a significant likelihood that, if notice were provided to defendants, the records and counterfeit products would be destroyed before the case could proceed to discovery.

Accordingly, plaintiffs have met the standard for an ex-parte seizure for items located at 71 15th Street and 950 4th Avenue but not as to 4617 8th Avenue and 441 Maryland Avenue.[10]

**B.  Particularity of Proposed Order**

As previously noted, the order must be particular enough to "enable the executing officer to ascertain and identify with reasonable certainty those items [he has been] authorized . . . to seize." *U.S. v. George*, 975 F.2d 72, 75 (2d Cir. 1992); see also 15 U.S.C. § 1116(d)(5) (An ex-parte seizure order must set out "a particular description of the matter to be seized, and a

---

[10] I also note that plaintiffs have complied with my previous instruction that they alert the U.S. Attorney's office, which they did on July 12, 2007, and that the order specify that it is to be the Marshal's Service which will perform the actual seizure.

description of each place at which such matter is to be seized.").

While the request to seize products, records and equipment which contain plaintiff's trademark is sufficiently specific, given that plaintiff has provided clear pictures of its trademark, the second proposed order eliminated the language authorizing seizure of records which reference the trademark by "by style or code number or otherwise" and, in its place, added language authorizing plaintiff to seize records which reference the trademark by "by product description, code language or code number." According to plaintiff, the seizure order, while admittedly broad, must contain such language in order to ensure that products and records that are relevant to counterfeiting but which contain no explicit reference to Koon Chun itself may be seized. As an example, plaintiff refers to a prior instance in which a defendant kept a ledger listing "soy sauce" when referring to Koon Chun hoisin sauce. Code names have also been used to conceal the identity of the supplier in that case. This valid concern, does not, however, give the Marshals specific criteria by which to break the code and determine which records relate to counterfeit products and which do not.[11]

In this second order, plaintiff also asks, in paragraphs

_____

[11] This problem of specificity is not cured by the fact that the Marshals will be assisted by an individual fluent in Chinese provided by plaintiff.

(c)(i) and (c)(ii) for "all such records which relate to or are likely to lead to information regarding issues in this case, such as ledgers, diaries, calendars, telephone-address books, notes, telexes, facilimile [sic] transmissions, cables, e-mails and telephone messages."  In order to clarify the meaning of this potentially overbroad language, I find that the "such records" referred to are only those which directly refer to plaintiff's trademarks.[12]

## II. Temporary Restraining Order

Plaintiff also requests a temporary restraining order, pending a hearing on a preliminary injunction, restraining defendants from manufacturing or making other unauthorized use of Koon Chun trademarks (or a counterfeit version of the mark likely to cause confusion), from making any representation which will lead people to believe that a product sold by defendants is authorized or related to plaintiff's products, and from otherwise infringing on plaintiff's trademarks.  Plaintiff also requests that defendants be restrained from disposing of any merchandise bearing plaintiff's trademarks (or counterfeit trademarks), and that defendants instead deliver such items to plaintiff, from

---

[12] The Court also expressed concern about the language which allowed seizure of "all plates, molds, dies, tooling machinery, assembly equipment, and other means of making" items (such as labels and advertisements) which contain plaintiff's trademark.  The second order resolves that issue by allowing for seizure only of such equipment which actually contains plaintiff's trademark or a counterfeit version of the trademark.

disposing of records relating to commerce in items bearing
plaintiff's trademarks (or counterfeit trademarks), and from
otherwise removing or altering counterfeit products and the
records relating to them.  Further, plaintiff requests that
defendants be restrained from assisting others in passing off
counterfeit products as authentic and from notifying suppliers
that a seizure has occurred.

Pursuant to Federal Rule of Civil Procedure 65(b) a court
may issue a temporary restraining order without written or oral
notice to the adverse party only if "(1) it clearly appears from
specific facts shown by affidavit or by the verified complaint
that immediate and irreparable injury loss or damage will result
to the applicant before the adverse party or that party's
attorney can be heard in opposition and (2) the applicant's
attorney certifies to the court in writing the efforts, if any,
which have been made to give notice and the reasons supporting
the claim that notice should not be required."  As discussed
above, plaintiff has demonstrated both irreparable injury and
explained why notifying defendants could result in the
destruction of crucial evidence.  Accordingly, the temporary
restraining order is granted.


III. Expedited Discovery

Plaintiff also request expedited discovery, pursuant to

Federal Rules of Civil Procedure 30 and 34, to be concluded
within three days following the hearing on the application for a
preliminary injunction. However, since there is no need to
decide the motion for expedited discovery ex-parte, I reserve
decision on that issue until after the show cause hearing, so
that defendants will have an opportunity to challenge that
motion.

## IV. Bond

Plaintiff states that a $1,000 bond is all that is required
and that that amount has been imposed by at least one other court
in granting plaintiff's ex-parte seizure motion. Plaintiff
argues that $1,000 is enough to cover the defendant for any loss
of profit due to wrongful seizure, especially considering the
fact wrongful seizure is unlikely given that defendants are
selling counterfeit goods. However, due to the fact that one of
the premises to be searched also houses an apparently lawful
businesses,[13] it appears that a higher bond amount is appropriate
in order to encourage plaintiff to be particularly careful during
its seizure and to protect the lawful rights of defendants.[14]
Accordingly, a $10,000 will be required.

---

[13] The fact that the owners of the restaurant apparently participate in
the scheme does not give me any reason to believe that the restaurant itself
is anything other than a lawful enterprise.

[14] In a recent seizure order granted by Judge Gleeson in this district,
a $5,000 bond was required.

## Conclusion

For the reasons set forth above, plaintiff's motion for an
*ex-parte* seizure order is granted in part and denied in part, the
motion for a temporary restraining order is granted, and I
reserve decision on the motion for expedited discovery. The
Clerk is directed to transmit a filed copy of the within to
plaintiff.

SO ORDERED.

Dated :   Brooklyn, New York
          July 18 , 2007

Time: 10:59 am

By:  s/ Judge Charles P. Sifton
     _____
     United States District Judge