```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
                                                  07-CV-2568
                        Plaintiff,               (CPS)

          - against -                             MEMORANDUM
                                                  OPINION AND
Kun Fung USA Trading, a/k/a Kun Fung Trading      ORDER
Co., Sonic Group, Inc., Wong Fat Market Inc.,
a/k/a Gung Fat Market, Cheung Fat Trading Inc.,
 a/k/a Cheung Fat Market, Gung Fat Trading
Inc., Metropolitan Group USA Inc., Chun Wai
Chak, a/k/a Ah Chak, Yuan Xi Li a/k/a Li Yuen,
a/k/a Ah Yuen, Xue Mei Huang, a/k/a May Huang,
Shu Fong Wong a/k/a Shu Wong, Zhe Doe, and
John Does 1-10,

                        Defendants.

---------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd., brings this action against defendants Kun Fung USA Trading, a/k/a Kun Fung Trading Co.; Sonic Group, Inc.; Wong Fat Market Inc., a/k/a Gung Fat Market; Cheung Fat Trading Inc., a/k/a Cheung Fat Market; Gung Fat Trading Inc.; Metropolitan Group USA Inc.; Chun Wai Chak, a/k/a Ah Chak; Yuan Xi Li a/k/a Li Yuen, a/k/a Ah Yuen; Xue Mei Huang, a/k/a May Huang; Shu Fong Wong a/k/a Shu Wong; Zhe Doe; and John Does 1-10. In the Complaint, plaintiff alleges that defendants engaged in (1) trademark infringement, pursuant to 15 U.S.C. § 1114; (2) counterfeiting, pursuant to 15 U.S.C. § 1116; (3) trade dress infringement, pursuant to 15 U.S.C. § 1125(a); (4) unfair competition, pursuant to 15 U.S.C. § 1125(a);

(5) dilution, under NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. On July 18, 2007, the undersigned granted, in part, plaintiff's motion for an *ex-parte* seizure order, and also granted plaintiff's motion for a temporary restraining order.[1] The seizure was conducted on July 24, 2007 and confirmed by this Court after a hearing on July 31, 2007, on which date the temporary restraining order was extended until August 7, 2007.

This Court held oral argument as to a preliminary injunction against all defendants on August 6, 2007, at which point defendants Sonic Group, Wong Fat Market, Yuan Xi Li, Xue Mei Huang, and Shu Fong Wong agreed to extend the temporary restraining order by consent until argument could be held regarding the preliminary injunction, scheduled for September 5, 2007.[2] The remaining parties have made no appearance before this Court.

Now before this Court is plaintiff's motion for a

---

[1] I granted the seizure order for 71 15th Street, Brooklyn and 950 4th Avenue, Brooklyn, but denied it as to other locations.

[2] Attorneys for Sonic Group, Wong Fat Market, Yuan Xi Li, Xue Mei Huang made an initial appearance on that date but had only been retained two to three days earlier and requested additional time to review the briefs and orders in this matter. Shu Fong Wong has also hired an attorney who did not appear, but Mr. Wong agreed to the extension. It is not clear if Mr. Wong's attorney also represents other parties, such as Metropolitan Group, that plaintiff has associated with Mr. Wong and, without any such information, the Court will not presume that Mr. Wong speaks for any party other than himself. However, this Court will entertain a motion to dissolve the preliminary injunction as to the non-appearing should Mr. Wong's attorney inform the Court that he also represents such other parties as well.

preliminary injunction against the non-appearing parties. Upon the findings of fact and conclusions of law set forth below, this motion is granted.

**Background**

The following findings of facts are derived from plaintiff's Complaint, filings and affidavits submitted in connection with this action, and from hearings and oral arguments held before the undersigned on July 31, 2007 and August 6, 2007.

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun. These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world. The United States is one of plaintiff's largest markets.

Plaintiff has a registered trademark featuring a distinctive design that is used on all Koon Chun products, that it uses in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the "trade dress"), which serves to distinguish the products for consumers. The label design has become widely associated by consumers and industry with plaintiff, and plaintiff enjoys

substantial goodwill from the label design owing to the length of use and the design's distinctive nature.[3]

*Defendants' Activities*

There exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the type made by plaintiff bearing counterfeit versions or colorable imitations of plaintiff's trademark in the United States. Over the last several years, since discovering that such counterfeiting was going on, plaintiff has initiated several actions in United States courts to halt these activities and has, on order of appropriate courts, seized many counterfeit items as a result. In the current action, plaintiff alleges that the defendants are interrelated entities[4] and individuals engaged in selling counterfeit products bearing plaintiff's trademark and trade dress.

Plaintiff began investigating the activities of the current defendants in November 2006, when one of plaintiff's distributors reported that a customer, Win's Produce Inc. ("Win's"), had returned five cases of soy sauce with plaintiff's labels on them after complaining about the taste and color. The distributor

---

[3] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

[4] The interrelationship is demonstrated by plaintiff's observations and by the shared phone numbers and addresses of defendants, described below.

sent the product to plaintiff who inspected the product and discovered that it was a counterfeit Koon Chun product, though it looked almost identical to authentic Koon Chun products.

Upon investigation, plaintiff was told that Win's had purchased the counterfeit product from a defendant named Ah Yuen. The invoice provided by Ah Yuen identified the distributor of the counterfeit product as defendant Gung Fat Trading Inc. Ah Yuen also provided Win's with a contact phone number, which plaintiff identified as a cell phone owned by defendant Xue Mei Huang. Plaintiff identified Huang's home address as 441 Maryland Avenue in Staten Island, a house co-owned by Huang and an individual known as Yuan Xi Li, who are husband and wife. Based on observations by plaintiff's investigator, it was determined that Yuan Xi Li and defendant Ah Yuen are the same person.

To further their investigation, plaintiff arranged for Win's to order additional products from Ah Yuen. That order was delivered in a white van registered in the name of Yuan Xi Li and driven by Au Yuen. The van was also observed at the 441 Maryland Avenue residence.[5]

Upon delivery, an invoice was provided to Win's from defendant Sonic Group, with an address of 71 15th Street in Brooklyn, a locked warehouse with no sign that is large enough to

---

[5] It is not known where the goods delivered in this shipment were stored prior to delivery.

hold "ten to twenty containers of merchandise." Plaintiff's investigator determined that defendant Cheung Fat Trading also uses that addresses. The investigator also identified an internet site which listed Cheung Fat's phone number as (718) 788-2822.

After the delivery, Ah Yuen drove the van to 4617 8th Avenue in Brooklyn, the location of defendant Wong Fat Market, an Asian grocery store which sells Koon Chun products and has a "storage area at the back." Ah Yuen went into the premises and was observed giving instructions to other employees, indicating that he held a managerial position at the store.[6] When plaintiff's investigator began looking at Koon Chun products on the store's shelves, Ah Yuen looked concerned. After a store employee asked if the investigator needed help, the investigator asked the employee if the store had any Koon Chun Hoisin Sauce. The employee referred the investigator to Ah Yuen who said that the store did not carry the product.[7]

In April 2007, plaintiff seized the books and records of Tung Ming Trading, Inc., another alleged counterfeiter of plaintiff's products, pursuant to a court order in this

---

[6] Plaintiff does not allege that Ah Yuen owned the store.

[7] Plaintiff does not allege that any of the products on the store's shelves were counterfeit.

district.[8] According to those records, Tung Ming was provided with counterfeit products by defendant Kun Fung USA Trading, located at 950 4th Avenue in Brooklyn. The owners of 950 4th Avenue were determined by plaintiff's investigator to be Shu Huai Lau and defendant Shu Fong Wong. That location is a three story building with a Chinese restaurant on the ground floor and only one mailbox, indicating that the entire building belongs to a single entity and that those who run the restaurant are connected with those who run Kun Fung.[9] The restaurant's telephone number is (718) 832-7760.

Among the phone numbers listed on invoices from Kun Fung and provided to Tung Ming was (718) 788-2822, the same number used by Cheung Fat. Kung Fun is operated by defendant Chun Wai Chak who used several telephone numbers, including (718) 788-2822, the same number used by Cheung Fat. Plaintiff is also in possession of a false registration application[10] filed with the Food and Drug Administration which lists defendant Metropolitan Group USA

---

[8] Tung Ming Trading is not a party to this litigation. According to plaintiff, Tung Ming provided counterfeit products to a company called Midwest Global Food Distributors, LLC, who plaintiff sued in the Northern District of Illinois in February 2007.

[9] During the seizure, defendant Shu Fong Wong informed plaintiff's investigator that he lived on the second floor of the building, though at the July 31 hearing he appeared to deny that. This may explain the late night activity witnessed by plaintiff's investigator.

[10] The original document sent to the FDA was apparently a request to register a facility. The FDA mailed a request for confirmation to a Hong Kong address listed in the request, which was not plaintiff's address, but the letter was delivered to plaintiff by a postman familiar with their actual address.

as a the U.S. agent in the application, with an address of 950 4th Avenue in Brooklyn. The owner listed on the application is defendant "Zhe" with a phone number of (718) 832-7760, the same number as used by the restaurant.

*Evidence Collected During Plaintiff's Seizure*

On July 24, pursuant to this Court's order, plaintiff, with the assistance of the United States Marshal's Service, seized products and document at two locations.

Plaintiff first searched the 950 4th Avenue location. There, among other things, plaintiff discovered 17 cases of counterfeit Koon Chun Ground Bean Sauce in a basement storage area. Plaintiff was able to identify the sauce as counterfeit from the boxes, which were hand-glued, rather than machine glued as with authentic Koon Chun products. In addition, the cans of sauce contained time stamps using a different font than is used on authentic Koon Chun products.[11] Plaintiff's investigator testified on July 31 that defendant Shu Fong Wong, who was at the location during the time of the seizure, initially denied knowing anything about Metropolitan but later informed plaintiff that

---

[11] The number "1" on authentic Koon Chun products contains a short stroke at the bottom of the numeral, while the counterfeit products did not have that stroke.
    Plaintiff's investigator also saw what he believed to be counterfeit versions of products from other manufacturers in the basement, identified by the hand-glued boxes.

Metropolitan was a company he had registered[12] but that the company was used by Ah Chak for importing things into the United States, though he did not know any details about that activity.[13]

Plaintiff then searched the warehouse at 71 15th Street, from which it seized several documents, including a letter written to Ah Chak apparently requesting samples of various products and their packaging, including samples of Koon Chun products and packaging. There was also a computer at that location with password protected files referring to Kun Fung.[14]

**Discussion**

Plaintiff moves for a preliminary injunction barring defendants and all those acting in concert with them from making unauthorized use of plaintiff's trademark; manufacturing, distributing or facilitating the commerce in counterfeit products bearing plaintiff's trademark; disposing of any merchandise bearing an unauthorized copy of plaintiff's trademark and instead

---

[12] According to plaintiff's investigator, Mr. Wong is one of three partners in the company, which Mr. Wong told plaintiff's investigator was formed in order to obtain a McDonald's franchise in China.

[13] Shu Fong Wong also stated that Ah Chak only came by once every few months and that he did not know Ah Chak's address or phone number or anything else about him. He further stated at the July 31 hearing that he rented the location to an individual named "Chun Wai Chak," whose name is apparently on Metropolitan's registration document.
Documents which plaintiff states are relevant to the counterfeiting scheme were also seized from the 4th Avenue location, though none of those documents were entered into evidence or read during the hearings.

[14] This Court approved a discovery order on July 31, 2007 and plaintiff is expected to request discovery of those documents.

delivering such items to plaintiff; disposing of any records relating to commerce in items bearing plaintiff's trademark; destroying or modifying counterfeit products or documents related to those products; and from notifying suppliers of the counterfeit products that a seizure has occurred or otherwise assisting others engaged in the production, distribution or sale of counterfeit products bearing plaintiff's trademark.

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996).

*1. Irreparable Harm*

Courts have repeatedly held that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm. *See Dunkin' Donuts Incorporated v. Albireh Donuts, Inc.*, 96 F.Supp.2d 146, 149 (N.D.N.Y. 2000). Trademark laws are designed to protect the public from confusion over the source of goods or services. *See Hermes International v. Lederer de Paris Fifth Avenue, Inc.*,

219 F.3d 104, 107-108 (2d Cir. 2000). Where the party seeking a preliminary injunction in a trademark case shows that it will "lose control over the reputation of its trademark pending trial," the requirement of irreparable injury is satisfied. *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985). A trademark "epitomizes the goodwill of a business. This creation and perpetration of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase - this is the reason d'etre for the sale." *Id*. at 97.

In the present case, plaintiff has produced testimony and physical evidence which demonstrates that defendants are engaged in a scheme to sell counterfeit products using the Koon Chun trademark (or a mark substantially similar).[15] Accordingly, so long as defendants continue to engage in practices which support the manufacture, sale and distribution of counterfeit Koon Chun products, plaintiff is being irreparably harmed by the trademark infringement.[16] *See Matter of Vuitton et Fils, S.A.*, 606 F.2d at

---

[15] While, at this stage, it is not yet certain that plaintiff would be able to prove that each of the defendants is connected to the scheme, the evidence presented is sufficient to demonstrate a connection between each of these defendants and the broader scheme. Moreover, as set forth in the accompanying order, the preliminary injunction causes no substantial harm to any legitimate business engaged in by plaintiffs who may ultimately be found to be unrelated to the scheme.

[16] Such practices include not only defendant's production or sale of counterfeit goods but also the destruction of evidence which may lead to the discovery of other participants.

4 (Discussing temporary restraining orders and finding that "[i]n a trademark infringement case, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient.").

*2. Likelihood of Success*

There is a "'great likelihood of confusion when the infringer uses the exact trademark' as the plaintiff." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (quoting *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 195 (3d Cir. 1990)). In such cases, "likelihood of confusion is inevitable." *Opticians*, 920 F.2d at 195. In fact, "[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut.'" *Id*. (quoting McCarthy, Trademarks and Unfair Competition ); *see Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) (In cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *[Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961),] because counterfeits, by their very nature, cause confusion.").

As discussed above, plaintiff has demonstrated that defendants are engaged in a scheme to sell products bearing the Koon Chun name and using plaintiff's trademark (or a mark

substantially similar). Plaintiff has thus demonstrated the likelihood of success on the merits. According, the motion for a preliminary injunction is granted, as set out in the accompanying order.[17]

### Conclusion

For the reasons set forth above, and as set forth in the accompanying order, plaintiff's motion is granted. The Clerk is directed to transmit a filed copy of the within to all parties and the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          August 6, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                                          United States District Judge

---

[17] The accompanying order substantially conforms to plaintiff's proposed order. However, plaintiff has requested that I enjoin defendants and their agents from contacting or otherwise notifying suppliers of infringing products that a seizure has occurred. Such language is an overly broad prior restraint on defendants' right to free speech and to prepare for trial and, accordingly, is not included in the accompanying order. *See Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590 (9th Cir. 1985) (finding that a district court's restraining order prohibiting the parties from discussing the merits of the case with the media was a prior restraint on free speech, subject to strict scrutiny). However, that does not mean that defendants cannot be held liable for such activity in a future action. In addition, plaintiff requests that the order direct defendants to turn over infringing products to plaintiff. However, such a request is more appropriately dealt with under the discovery order which I authorized on July 31.