```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
                                                    07-CV-2568
                        Plaintiff,                  (CPS)(SMG)

        - against -                                 MEMORANDUM
                                                    OPINION AND
Kun Fung USA Trading, a/k/a Kun Fung Trading        ORDER
Co., Sonic Group, Inc., Wong Fat Market Inc.,
a/k/a Gung Fat Market, Cheung Fat Trading Inc.,
 a/k/a Cheung Fat Market, Gung Fat Trading
Inc., Metropolitan Group USA Inc., Chun Wai
Chak, a/k/a Ah Chak, Yuan Xi Li a/k/a Li Yuen,
a/k/a Ah Yuen, Xue Mei Huang, a/k/a May Huang,
Shu Fong Wong a/k/a Shu Wong, Zhe Doe, and
John Does 1-10,

                        Defendants.

---------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd., brings this action against defendants Kun Fung USA Trading, a/k/a Kun Fung Trading Co.; Sonic Group, Inc.; Wong Fat Market Inc., a/k/a Gung Fat Market; Cheung Fat Trading Inc., a/k/a Cheung Fat Market; Gung Fat Trading Inc.; Metropolitan Group USA Inc.; Chun Wai Chak, a/k/a Ah Chak; Yuan Xi Li a/k/a Li Yuen, a/k/a Ah Yuen; Xue Mei Huang, a/k/a May Huang; Shu Fong Wong a/k/a Shu Wong; Zhe Doe; and John Does 1-10. In the Complaint, plaintiff alleges that defendants engaged in (1) trademark infringement, pursuant to 15 U.S.C. § 1114; (2) counterfeiting, pursuant to 15 U.S.C. § 1116; (3) trade dress infringement, pursuant to 15 U.S.C. § 1125(a); (4) unfair competition, pursuant to 15 U.S.C. § 1125(a);

(5) dilution, under NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. On July 18, 2007, the undersigned granted, in part, plaintiff's motion for an *ex-parte* seizure order, and also granted plaintiff's motion for a temporary restraining order.[1] The seizure was conducted on July 24, 2007 and confirmed by this Court after a hearing on July 31, 2007, on which date the temporary restraining order was extended until August 7, 2007.

This Court heard oral argument on plaintiff's motion for a preliminary injunction against all defendants on August 6, 2007. Defendants Sonic Group, Inc., Wong Fat Market Inc., Yuan Xi Li, Xue Mei Huang, and Shu Fong Wong agreed to extend the temporary restraining order by consent until September 5, 2007.[2] On August 6, 2007, I granted plaintiff's motion for a preliminary injunction against the non-appearing parties. On September 5, 2007, I heard oral argument on plaintiff's motion for a preliminary injunction against defendants Sonic Group, Inc., Wong Fat Market Inc., Yuan Xi Li, Xue Mei Huang, Chun Wai Chak,[3] and

---

[1] I granted the seizure order for 71 15th Street, Brooklyn and 950 4th Avenue, Brooklyn, but denied it as to other locations.

[2] Attorneys for Sonic Group, Inc., Wong Fat Market Inc., Yuan Xi Li, Xue Mei Huang made an initial appearance on that date but had only been retained two to three days earlier and requested additional time to review the briefs and orders in this matter. Shu Fong Wong also hired an attorney who did not appear, but Mr. Wong agreed to the extension.

[3] Subsequent to the August 6, 2007 hearing, Mr. Wong's attorney informed the Court that she also represents defendant Chun Wai Chak. Although Mr. Chak's counsel did not make a formal motion for the dissolution of the preliminary injunction that was entered against Mr. Chak, by filing an

Shu Fong Wong. In open court, I denied plaintiff's motion for a further extension of the temporary restraining order against the appearing defendants pending a decision on plaintiff's motion for a preliminary injunction because the statutorily prescribed period for a temporary restraining order had lapsed and defendants did not consent to an extension. The only immediate and irreparable injury that plaintiff pointed to was that documents and products would be destroyed by defendants pending a decision. I concluded that such actions appeared unlikely at that stage and in any event avoidable by other means.

Now before this Court is plaintiff's motion for a preliminary injunction against defendants Sonic Group, Inc., Wong Fat Market Inc., Yuan Xi Li, Xue Mei Huang, Chun Wai Chak, and Shu Fong Wong. Upon the findings of fact and conclusions of law set forth below, plaintiff's motion is granted against defendants Sonic Group, Inc., Yuan Xi Li, Chun Wai Chak, and Shu Fong Wong, and is denied as to defendants Wong Fat Market Inc., and Xue Mei Huang.

**Background**

The following findings of facts are derived from the underlying allegations in plaintiff's Complaint and affidavits

---

opposition to plaintiff's motion for a preliminary injunction, I treat her opposition as a motion for dissolution of the preliminary injunction against Chun Wai Chak. Hence, I include Mr. Chak as one of the defendants in the motion now before this Court.

submitted by both parties in connection with this motion, and from proceedings before the undersigned on July 31, 2007, August 6, 2007, and September 5, 2007. There are no factual disputes between the parties requiring an evidentiary hearing. *See Davis v. New York City Housing Authority*, 166 F.3d 432, 437-38 (2d Cir.1999).[4]

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun. These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world. The United States is one of plaintiff's largest markets.

Since September 1986, Plaintiff has been the owner of a trademark registered with the United States Patent and Trademark Office, featuring a distinctive design that is used on all Koon Chun products and in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the "trade dress"), which serves to distinguish the products for consumers. The label design has become associated by consumers and industry with plaintiff, and plaintiff enjoys substantial goodwill from the label design owing

---

[4] Defendants' opposition consists entirely of statements in declarations by the attorneys that plaintiff has failed to present a prima facie case for a preliminary injunction.

to the length of use and the design's distinctive nature.[5]

*Defendants' Activities*

There exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the type made by plaintiff bearing counterfeit versions or colorable imitations of plaintiff's trademark in the United States. Over the last several years, since discovering that such counterfeiting was going on, plaintiff has initiated several actions in United States courts to halt these activities and has, on order of appropriate courts, seized a substantial number of counterfeit items. In the current action, plaintiff alleges that the defendants, all located or doing business in the New York City metropolitan area, are interrelated entities[6] and individuals engaged in selling counterfeit products bearing plaintiff's trademark and trade dress.

Plaintiff began investigating the activities of the current defendants in November 2006, when one of plaintiff's distributors reported that a customer, Win's Produce Inc. ("Win's"), had returned five cases of soy sauce with plaintiff's labels on them after complaining about the taste and color. The distributor sent the product to plaintiff who inspected the product and

---

[5] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

[6] The interrelationship is demonstrated by plaintiff's observations and by the shared phone numbers and addresses of defendants, described below.

discovered that it was a counterfeit Koon Chun product, although it looked almost identical to authentic Koon Chun products.

Upon investigation, plaintiff was told that Win's had purchased the counterfeit product from a defendant named Ah Yuen. The invoice provided by Ah Yuen identified the distributor of the counterfeit product as defendant Gung Fat Trading Inc. Ah Yuen also provided Win's with a contact phone number, which plaintiff identified as a cell phone owned by defendant Xue Mei Huang. Plaintiff identified Huang's home address as 441 Maryland Avenue in Staten Island, a house co-owned by Huang and her husband Yuan Xi Li. Based on physical observations by plaintiff's investigator, it was determined that Yuan Xi Li and defendant Ah Yuen are the same person.

To further their investigation, plaintiff arranged for Win's to order additional products from Ah Yuen. That order was delivered in a white van registered in the name of Yuan Xi Li and driven by Au Yuen. The van was also observed at the 441 Maryland Avenue residence.[7]

Upon delivery, an invoice was provided to Win's from defendant Sonic Group, with an address of 71 15th Street in Brooklyn, a locked warehouse with no sign, large enough to hold a number of shipping containers of merchandise. Plaintiff's

---

[7] It is not known where the goods delivered in this shipment were stored prior to delivery.

investigator determined that defendant Cheung Fat Trading also uses that addresses. The investigator also identified an internet site which listed Cheung Fat's phone number as (718) 788-2822.

After the delivery, Ah Yuen drove the van to 4617 8th Avenue in Brooklyn, the location of defendant Wong Fat Market, an Asian grocery store which sells Koon Chun products and has a "storage area at the back." Ah Yuen went into the premises and was observed giving instructions to other employees and generally behaving as though he held a managerial position at the store.[8] When plaintiff's investigator began looking at Koon Chun products on the store's shelves, Ah Yuen appeared concerned. After a store employee asked if the investigator needed help, the investigator asked the employee if the store had any Koon Chun Hoisin Sauce. The employee referred the investigator to Ah Yuen who said that the store did not carry the product.[9]

In April 2007, plaintiff seized the books and records of Tung Ming Trading, Inc., another alleged counterfeiter of plaintiff's products, pursuant to a court order in this district.[10] According to those records, Tung Ming was provided

---

[8] Plaintiff does not allege that Ah Yuen owned the store.

[9] Plaintiff does not allege that any of the products on the store's shelves were counterfeit.

[10] Tung Ming Trading is not a party to this litigation. According to plaintiff, Tung Ming provided counterfeit products to a company called Midwest Global Food Distributors, LLC, sued by plaintiff in the Northern District of

with counterfeit products by defendant Kun Fung USA Trading, located at 950 4th Avenue in Brooklyn. The owners of 950 4th Avenue were determined by plaintiff's investigator to be Shu Huai Lau and defendant Shu Fong Wong. That location is a three story building with a Chinese restaurant on the ground floor and only one mailbox, suggesting that the entire building belongs to a single entity and that those who run the restaurant are connected with those who run Kun Fung.[11] The restaurant's telephone number is (718) 832-7760.

Among the phone numbers listed on invoices from Kun Fung and provided to Tung Ming was (718) 788-2822, the same number used by Cheung Fat. Kung Fun is operated by defendant Chun Wai Chak who used several telephone numbers, including (718) 788-2822, the same number used by Cheung Fat. Plaintiff is also in possession of an unauthorized registration application in plaintiff's name[12] filed with the Food and Drug Administration which lists defendant Metropolitan Group USA as a the U.S. agent in the application, with an address of 950 4th Avenue in Brooklyn. The owner listed

---

Illinois in February 2007.

[11] During the seizure, defendant Shu Fong Wong informed plaintiff's investigator that he lived on the second floor of the building, though at the July 31 hearing he appeared to deny that. This may explain the late night activity witnessed by plaintiff's investigator.

[12] The original document sent to the FDA was apparently a request to register a facility. The FDA mailed a request for confirmation to a Hong Kong address listed in the request, which was not plaintiff's address, but the letter was delivered to plaintiff by a postman familiar with their actual address.

on the application is defendant "Zhe" with a phone number of (718) 832-7760, the same number as used by the restaurant.

*Evidence Collected During Plaintiff's July 24, 2007 Seizure*

On July 24, 2007, pursuant to this Court's order, plaintiff, with the assistance of the United States Marshal's Service, seized products and document at two locations.

Plaintiff first searched the 950 4th Avenue location. There, among other things, plaintiff discovered 17 cases of counterfeit Koon Chun Ground Bean Sauce in a basement storage area. Plaintiff was able to identify the sauce as counterfeit from the boxes, which were hand-glued, rather than machine glued as with authentic Koon Chun products. In addition, the cans of sauce contained time stamps using a different font than is used on authentic Koon Chun products.[13] Plaintiff's investigator testified on July 31 that defendant Shu Fong Wong, who was at the location during the time of the seizure, initially denied knowing anything about Metropolitan but later informed plaintiff that Metropolitan was a company he had formed[14] but that the company was used by Ah Chak for importing things into the United States,

---

[13] The number "1" on authentic Koon Chun products contains a short stroke at the bottom of the numeral, while the counterfeit products did not have that stroke.
    Plaintiff's investigator also saw what he believed to be counterfeit versions of products from other manufacturers in the basement, identified by the hand-glued boxes.

[14] According to plaintiff's investigator, Mr. Wong is one of three partners in the company, which Mr. Wong told plaintiff's investigator was formed in order to obtain a McDonald's franchise in China.

though he did not know any details about that activity.[15]

Plaintiff then searched the warehouse at 71 15th Street, from which it seized several documents, including a letter written to Mr. Chak apparently requesting samples of various products and their packaging, including samples of Koon Chun products and packaging. There was also a computer at that location with password protected files referring to Kun Fung.[16]

### Discussion

Plaintiff moves for a preliminary injunction barring defendants and all those acting in concert with them from making unauthorized use of plaintiff's trademark; manufacturing, distributing or facilitating the commerce in counterfeit products bearing plaintiff's trademark; disposing of any merchandise bearing an unauthorized copy of plaintiff's trademark and instead delivering such items to plaintiff; disposing of any records relating to commerce in items bearing plaintiff's trademark; destroying or modifying counterfeit products or documents related to those products; and from notifying suppliers of the counterfeit products that a seizure has occurred or otherwise

---

[15] Shu Fong Wong also stated that Ah Chak only came by once every few months and that he did not know Ah Chak's address or phone number or anything else about him. He further stated at the July 31 hearing that he rented the location to an individual named "Chun Wai Chak," whose name is apparently on Metropolitan's registration document.
    Documents which plaintiff states are relevant to the counterfeiting scheme were also seized from the 4th Avenue location, though none of those documents were entered into evidence or otherwise presented to the Court.

[16] This Court approved a discovery order on July 31, 2007 and plaintiff is expected to request discovery of those documents.

assisting others engaged in the production, distribution or sale of counterfeit products bearing plaintiff's trademark.

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996).

Courts have repeatedly held that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm. *See Dunkin' Donuts Incorporated v. Albireh Donuts, Inc.*, 96 F.Supp.2d 146, 149 (N.D.N.Y. 2000). Trademark laws are designed to protect the public from confusion over the source of goods or services. *See Hermes International v. Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104, 107-108 (2d Cir. 2000). Where the party seeking a preliminary injunction in a trademark case shows that it will "lose control over the reputation of its trademark pending trial," the requirement of irreparable injury is satisfied. *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985). A trademark "epitomizes the goodwill of a business. This creation and perpetation of goodwill depends on customer

recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase - this is the reason d'etre for the sale." *Id*. at 97.

In cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under [*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961),] because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003).

In the present case, plaintiff argues that sufficient testimony and physical evidence has been produced to support a finding that defendants Sonic Group, Inc., Yuan Xi Li, Chun Wai Chak, and Shu Fong Wong are likely to be shown to have engaged in a scheme to sell, distribute, and manufacture counterfeit products using the Koon Chun trademark (or a mark substantially similar). Defendants argue that the evidence and testimony produced by plaintiff is not sufficient to establish a likelihood of success in proving that defendants are engaged in the alleged scheme. Lerner Dec. ¶¶4-5; Milosavljevic Dec. ¶¶4-5.

Plaintiff has seized documents referring to Koon Chun, including a letter requesting samples of Koon Chun products and packaging from Sonic Group, Inc.'s warehouse located at 71 15th Street, Brooklyn. *See* Seizure Confirmation Order, dated July 31,

2007. Plaintiff has also provided evidence that Yuan Xi Li sold and delivered counterfeit Koon Chun products to Win's, a customer of plaintiff's authorized distributor, Handyfat, and on at least one occasion provided Win's with an invoice from Sonic Group, Inc. Declaration of Raymond Chan(Chan Dec.) ¶¶ 29-31 and 33-34; Pl. Exhibit L.

With respect to defendants Shu Fong Wong and Chun Wai Chak, plaintiff has seized counterfeit Koon Chun Products from the 950 4th Avenue, Brooklyn address, which is the property that appears to be owned by Mr. Wong and the location from which Mr. Chak's company, Kun Fung Trading Co., conducts business. *See* Seizure Confirmation Order*,* dated July 31, 2007; Pl. Exhibit N (Kun Fung USA invoices); Pl. Exhibit P (deed for 950 4th Avenue location). Based on the records seized from Tung Ming Trading, Inc., another alleged counterfeiter of plaintiff's products who is not a party to this action, Tung Ming was provided with counterfeit products by Mr. Chak's company Kun Fung Trading Co. Pl. Exhibit N. Plaintiff has also offered evidence in the form of an unauthorized food facility registration application made to the United States Food and Drug Administration on behalf of Koon Chun by Metropolitan Group USA, Inc., the company registered at Mr. Wong's 950 4th Avenue address. Pl. Exhibit Q; Chan Dec. ¶¶ 41-42.

Moreover, during the July 31, 2007 seizure confirmation hearing, plaintiff's witness, Raymond Chan, a Koon Chun employee

who served as a translator between the United States marshals and Mr. Wong during the court ordered seizure on July 24, 2007, testified that they found Metropolitan Group corporate books and Koon Chun related documents in Mr. Wong's residence on the Second Floor of the 950 4th Avenue address. July 31, 2007 Transcript (July 31 Tr.) at 17-18. Mr. Chan testified that Mr. Wong informed the marshals that the Metropolitan Group was registered by Mr. Wong and used by co-defendant, Mr. Chak. July 31 Tr. at 9, 28. Mr. Wong also testified that he had rented an undisclosed portion of the 950 4th Avenue building to Mr. Chak. July 31 Tr. at 26-27. Lastly, Mr. Wong offered the Metropolitan Group certificate of registration as an exhibit on July 31, 2007. Court Exhibit 1.

Therefore, plaintiff has produced enough physical evidence and testimony to demonstrate that Sonic Group, Inc., Yuan Xi Li, Chun Wai Chak, and Shu Fong Wong, are likely to be shown to have engaged in a scheme to sell, distribute, and manufacture counterfeit Koon Chun products at the trial of this matter. Accordingly, so long as defendants Sonic Group, Inc., Shu Fong Wong, Chun Wai Chak, and Yuan Xi Li, continue to engage in practices which support the manufacture, sale and distribution of counterfeit Koon Chun products, plaintiff is being irreparably harmed by the trademark infringement.[17] *See Matter of Vuitton et Fils, S.A.*, 606 F.2d at 4

---

[17] Such practices include not only defendant's production or sale of counterfeit goods but also the destruction of evidence which may lead to the discovery of other participants.

(finding that "[i]n a trademark infringement case, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient.").

Plaintiff, however, has not provided sufficient evidence against Xue Mei Huang and Wong Fat Market Inc., to permit the court to conclude that it will also be able to show at the trial of this matter that Ms. Huang and Wong Fat Market Inc. are engaged in a scheme to sell, distribute, and manufacture counterfeit Koon Chun products. Plaintiff's only evidence against Ms. Huang is a cell phone number used by Mr. Li as his business contact number and registered in Ms. Huang's name. Chan Dec. ¶¶ 30-31. Plaintiff has also failed to produce evidence sufficient to establish a likelihood of success in proving that Wong Fat Market Inc. is connected to the counterfeiting scheme. Although Mr. Li held a managerial position at Wong Fat Market, no counterfeit products were found at Wong Fat Market's 4617 8th Avenue, Brooklyn location. *See* July 19, 2007 memorandum opinion and order. If the store were connected to the scheme, they would be expected to sell counterfeit, rather than authentic, products. *Id*. Therefore, plaintiff has failed to demonstrate that it is likely to succeed on the merits against Xue Mei Huang or Wong Fat Market Inc., at the trial of this matter. For the same reasons, plaintiff has not shown irreparable harm by defendants Xue Mei Huang and Wong Fat Market Inc.

Accordingly, based on the above findings of fact and conclusions of law, and as set out in the accompanying order, the motion for a preliminary injunction against defendants Sonic Group, Inc., Yuan Xi Li, Chun Wai Chak, and Shu Fong Wong is granted and denied as to defendants Xue Mei Huang and Wong Fat Market Inc.[18]

**Conclusion**

For the reasons set forth above, and as set forth in the accompanying order, plaintiff's motion for a preliminary injunction is granted against defendants Sonic Group, Inc., Yuan Xi Li, Chun Wai Chak, and Shu Fong Wong and denied as to defendants Wong Fat Market Inc., and Xue Mei Huang. The Clerk is directed to transmit a filed copy of the within to all parties and the magistrate judge. SO ORDERED.

Dated :   Brooklyn, New York
          September 6, 2007

              By:  /s/ Charles P. Sifton (electronically signed)
                                  United States District Judge

---

[18] The accompanying order substantially conforms to plaintiff's proposed order.  However, plaintiff has requested that I enjoin defendants and their agents from contacting or otherwise notifying suppliers of infringing products that a seizure has occurred.  Such language is an overly broad prior restraint on defendants' right to free speech and to prepare for trial and, accordingly, is not included in the accompanying order. *See Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590 (9th Cir. 1985) (finding that a district court's restraining order prohibiting the parties from discussing the merits of the case with the media was a prior restraint on free speech, subject to strict scrutiny).  However, that does not mean that defendants cannot be held liable for such activity in a future action.  In addition, plaintiff requests that the order direct defendants to turn over infringing products to plaintiff.  However, such a request is more appropriately dealt with under the discovery order which I authorized on July 31, 2007.